## LAMBERSON *v.* COLLINS.

### Opinion delivered March 6, 1916. ·

1. ROAD DISTRICTS—FORMATION—ACTS TO BE DONE—SURVEYS, PLANS AND ESTIMATES OF COST.—A compliance with both subdivisions of section 1 of Act No. 338 of the Acts of 1915 is necessary, in order that the formation of a road district under said act be held valid.

2. ROAD DISTRICTS—FORMATION—REQUISITES.—In the formation of a road district under Act 338 of the Acts of 1915, it is necessary that the provisions of subdivision B of § 1, of the act, be followed, providing for the furnishing of a survey, plans and estimates of cost by the State Highway Department, as well as the provisions of subdivision A, of § 1, the lawmakers having intended to provide for a source of information as to the magnitude and cost of the improvement, before the property owners are called upon to exercise their choice, either favoring or opposing it.

Appeal from Craighead Circuit Court, Jonesboro District; *W. J. Driver,* Judge; reversed.

*H. M. Mayes,* for appellants.

The act is void. 92 Ark. 93, 621; 118 Ark. 119; 115 *Id.* 88; 115 *Id.* 594; 116 *Id.* 167. Other questions are argued but as they are not decided by the court they are not abstracted.

*N. F. Lamb,* for appellees.

1. The act is not unconstitutional and void. Acts containing the same provisions have been upheld. 91 Ark. 30; 91 Ark. 79.

2. The provisions of the act were fully complied with. The discretion of the court below will not be disturbed on appeal. 102 Ark. 553. It is not necessary to set out the kind or particular character of the improvements to be made. 17 S. W. 678; 113 Ark. 193; 97 Ark. 534.

McCULLOCH, C. J. This is a proceeding which originated in the county court of Craighead County, upon the petition of property owners of that county, for the establishment of a road improvement district, under Act No. 338 of the General Assembly of 1915, entitled "An Act providing for the creation and establishment of Road Improvement Districts for the purpose of building, constructing and maintaining the highways of the State of

Arkansas.'' The petition included a description of the land to be included in the district, and also contained a description of the route of the highways proposed to be improved, and referred to a plat filed with the petition which showed the route of the road drawn to a scale. But there was nothing either in the petition or on the 'plat showing the plans and specifications or estimates of the cost of the road or the character of the material to be used. Plans and specifications and estimates of the cost were, however, procured from the State Highway Department during the pendency of the proceedings in the county court after the petitions had been filed and notice given by advertisements pursuant to the statute. Appellants appeared as remonstrants against granting the prayer of the petition, and on the hearing of the matter the county court found that the petition contained a majority in value and acreage of the land owners and made an order establishing the district. On appeal to the circuit court, there was a trial which resulted in a like order being made by the circuit court, and an appeal has been duly prosecuted to this court.

The first section of the statute under consideration reads as follows: "Section 1. (A) That whenever a majority in land value, acreage or number of land owners within a proposed road improvement district in any county shall petition the county court to establish a road improvement district to embrace a certain region which it is intended shall be embraced within the boundaries of the proposed district and shall file a plat with said petition upon which the boundaries of the proposed district shall be plainly indicated showing the roads which it is intended to construct and improve as nearly as practicable, and shall also file a good bond conditioned that the petitioners will pay all court costs and legal advertising that may accrue in the event said district is not established, it shall then be the duty of the county court to give public notice by publication in some weekly newspaper having a *bona fide* circulation in said county by three consecutive insertions therein that said petition has

been filed, and giving a description of the territory embraced in said petition in as large subdivisions or calls as practicable, and calling upon all persons, firms or corporations owning land or other real property within the proposed district to appear before the county court on some date to be fixed by the court not less than five days after the last insertion of said notice to show cause for or against the establishment of said district. The original petition may be circulated among the land owners, or such number of exact copies of same as may be deemed necessary may be circulated, and when all of said petitions are filed at or before the time of the hearing above mentioned the said petitions shall be consolidated and treated as one petition, if same are filed before or at the date of said hearing.

"(B) *Provided, however,* upon application of the county judge, or of ten or more land owners within a proposed road improvement district to the State Highway Commission it shall be the duty of the State Highway Commission to instruct and direct the State Highway Engineer, or his assistant, to prepare preliminary surveys, plans, specifications and estimates of the roads which it is proposed to construct and improve within said district in the same manner as set out in section 7 of this act, and file them in the county court of said county for the purpose of determining the feasibility of any road improvement and the cost thereof before said petitions are circulated, and when said preliminary plans, specifications and estimates are so made and filed the State Highway Commission, upon the application of either the county judge or ten or more land owners, shall cause to be prepared the petitions to be circulated among the land owners in the proposed district for the purpose of obtaining a majority in land value, acreage or number of land owners, as set out in the preceding section, and when such majority is obtained said petition shall be filed in the county court and a date set for a hearing and due notice thereof given to the owners of real property in said district of said hearing as provided by the preceding sec-

tion, and when said hearing is so had, the organization of said district shall then proceed in the manner hereinafter prescribed.''

There was no attempt to comply with the terms of subdivision (B) in the matter of procuring a preliminary survey and plans, specifications and estimates from the State Highway Commission before the circulation of the petition. The contention of counsel for the petitioners is that the two subdivisions of section 1 provide alternative methods of forming a road district, and that having complied fully with the terms of subdivision (A) the district was legally organized merely upon the petition of a majority of the land owners showing the territory to be embraced and the route of the road, and that after the formation of the district there is provision for a preliminary survey and plans, specifications and estimates of costs in section 7 of the same statute. We have reached the conclusion, after a careful consideration of the statute, that the construction of counsel for petitioners is not the correct one, and that subdivision (B) is merely a proviso setting forth conditions upon which the district may be formed. The language of the subdivision itself leads to that conclusion, because it follows in the form of a proviso and it requires that upon an application of the county judge or ten or more land owners in the proposed district, the State Highway Engineer or his assistant shall ''prepare preliminary surveys, plans, specifications and estimates of the roads which it is proposed to construct and improve, * * * and file them in the county court of said county for the purpose of determining the feasibility of any road improvement and the cost thereof before said petitions are circulated.'' It will be observed that the word ''petition'' is used for the first time in this subdivision in the above quotation, and the word is used in a way which indicates that it refers to the petition mentioned in subdivision (A). We think the law makers intended the two subdivisions to be read together so as to provide an appropriate scheme for advising the land owners of the character of the improve-

ment to be undertaken, and the cost thereof, so that they could act upon the petitions intelligently.

Without stopping to determine whether the Legislature may not, if it sees fit to do so, authorize the county court to create a road improvement district without first having a preliminary survey and estimate of the cost and specifications of the character of material to be used, we think it has not done so in this instance, for there is little reason to believe that the Legislature would have deemed it necessary to so carefully provide for a scheme of preliminary work under one method of forming road districts and not do so under the other. When the whole of section 1 is read together, it is obvious that the lawmakers intended to provide for a source of information as to the magnitude and cost of the improvement before the property owners are called on to express their choice, either favoring or opposing it.

It is true that there is a further provision in section 7 in regard to surveys, plans, etc., which tends to obscure the real meaning of the law makers, but the language in section number 1 leads so definitely to the conclusion we have here expressed that the cloud cast upon its meaning by section number 7 is not sufficient to change that view. Section 7 provides for the preliminary survey, and the plans, specifications and estimates of the cost to be made by the State Highway Engineer, but provides further that if such survey, plans, etc., have already been made under subdivision (B) of section 1, then the commissioner may adopt it without having another one made. The more reasonable view is, however, that the Legislature intended, as before stated, to provide a method for giving the land owners the necessary information before they are called on to sign the petition, and we can not indulge the presumption to the contrary in the face of the language used in subdivision (B) of the first section of the statute. It is very clearly expressed there that the preliminary survey, plans, specifications and estimates of cost, etc., shall be procured and filed in the county court "before said petitions are circulated,"

and it is a strained construction to put upon it to say that the words "said petition" referred to alternative methods of procedure and not to that mentioned in subdivision (A).

There is no pretense that the terms of the statute in that respect were complied with, and as the omission is jurisdictional the county court has no authority to establish the district upon petitions procured and filed in the county court before the preliminary survey, estimates, etc., were filed. There are other questions raised in the case, which the conclusion we have reached on this point renders it unnecessary for us to decide.

The judgment of the circuit court establishing the district is therefore reversed, and the cause is remanded with directions to the circuit court to enter a judgment dismissing the petition for establishment of the road district, and to certify the same down to the county court.

### OPINION ON REHEARING.

McCULLOCH, C. J.   A petition for rehearing has been filed by the appellees and we have before us, in addition to the briefs filed by counsel for the respective parties to this proceeding, numerous briefs filed by other attorneys who appear here as *amici curiae,* but who in fact represent other road districts which are said to have been organized under the terms of the statute we now have under consideration, and which are invalid if we adhere to the conclusions originally announced as to the proper construction of the statute.

It is very earnestly contended that our interpretation of the statute is erroneous and that the effect of the decision is disastrous because it invalidates a large number of road districts already organized, in some of which, it is said, bonds have been issued and the money thus procured has been spent. Considerations of mere expediency should not appeal to us, for the law can not be changed by judicial interpretation simply to suit our notion of expediency. Changes in the law fall within the sole province of the legislative branch of government. Judges

can only interpret the law as enacted by the Legislature. We have carefully read and considered the arguments of counsel and a majority of the judges of this court are still of the opinion that the construction of the statute announced in the original opinion is correct.

Counsel have introduced here a stipulation amending the record so as to show that the State Highway Engineer made a certificate adopting, as his own, the surveys, maps, plans, estimates, etc., of the Berthe Engineering Company, a private concern which was employed by the petitioners to make surveys and prepare maps, plans and estimates of the proposed improvement. It appears from the stipulation now filed that said certificate of the State Highway Engineer was brought into the record of the proceedings of the county court by stipulation of counsel long after the petition had been filed and presented to the court. It was done, in fact, after the hearing on the petition had been adjourned over to give time for procuring the plans, etc., of the State Highway Engineer. The statute requires that the "preliminary surveys, plans, specifications and estimates of the road which it is proposed to construct and improve," must be filed in the county court "before said petitions are circulated." It is too late to procure the surveys, etc., after the petitions have been filed and presented to the court.

Rehearing denied.

WOOD and KIRBY, JJ., dissent.