## RAYDER *v.* WARRICK.

## Opinion delivered April 15, 1918.

1. STATUTES—RULES OF CONSTRUCTION.—In construing statutes, courts must give effect to the intention of the Legislature as collected from the entire statute, and that intention must prevail over inconsistencies between different sections or different parts of the same section when either a strict or liberal construction of the language of any particular section would lead to a contradiction between it and other sections.

2. ROADS—ORGANIZATION—CHANGE OF PLANS.—Under § 16, Act 338, Acts of 1915, the commissioners of a road district may alter the plans and change the route in order to better carry out the improvement as originally contemplated, but the act does not authorize them

to change the plan of the improvement to a wholly different one, or to construct it over a wholly different route.

3. ROADS—ORGANIZATION—CHANGE OF PLANS—CONSENT OF SIGNERS' OF PETITION.—The prohibition in Act 338, Acts of 1915, against changing the route and character of a contemplated road, from that designated in the original petition, can not be abrogated by an agreement between the signers of the original petition, that such changes could be made.

Appeal from Desha Chancery Court; *Z. T. Wood,* Chancellor; reversed.

*E. E. Hopson,* for appellant.

The order of the county court making the changes was void. 123 Ark. 209; 180 Ill. 151; 40 Atl. 938.

*J. W. & J. W. House, Jr.,* for appellees.

1. The changes made were authorized by the act. Act 338, 1915, § § 1 and 16; 130 Ark. 410.

2. The statute was literally complied with. Appellants have no right to complain. No appeal was taken. All the original petitioners were in favor of the changes. Due notice was given and the court found that a majority of land owners favored the changes and none appealed.

### STATEMENT OF FACTS.

This is a suit in equity by W. R. Rayder, an owner of real estate within the boundaries of a road improvement district, against W. H. Warrick, E. W. Warrington and Scott McGehee, as commissioners of Road Improvement District No. 1, of Desha County, to restrain them from further proceeding with the construction of the improvement within said district.

The allegations of the complaint are substantially as follows:

Road Improvement District No. 1, Desha County, was established under Act. No. 338 of the Acts of 1915, being an act providing for the creation and establishment of road improvement districts for the purpose of building and constructing and maintaining highways in the State of Arkansas. In compliance with the act, the State Highway Engineer made a preliminary estimate for

the construction of the road and estimated it to cost $5,903.20 per mile or a total cost of $62,455.90. According to the preliminary estimates filed by the State Highway Engineer, the road was to be constructed from McArthur via McGehee to the Drew County line and was to be 10.58 miles in length. It was to be constructed of Benton gravel, spread and rolled for the finished road, twelve feet wide and six inches deep. Subsequently the commissioners concluded it would be to the best interest of the district to make changes in the preliminary plan.

First, that the road west from McGehee to the Drew County line should be located on the present road bed, rather than on a straight line, because it would cost less, both in construction and right of way.

Second, that the type of the road should be changed from a six-inch gravel one to a stone base with an asphalt surface.

Third, the location of the road in the city of McGehee should be changed from a road on First Avenue to run on Ash Street to the intersection of Ash and Second Avenue, thence west on Second Avenue. The total estimated cost of the road with the changes amounted to $119,300.

The county court granted the prayer of the commissioners and made an order changing the location of the road and the material to be used in constructing it in accordance with the prayer of the petition. The plaintiff, as an owner of real estate in the proposed district, sought to restrain the commissioners from proceeding further in the construction of the improvement on the ground that the county court had no authority to order these changes to be made.

The court sustained a demurrer to the complaint and the plaintiff declining to plead further, his complaint was dismissed for want of equity. The case is here on appeal.

HART, J., (after stating the facts). The road district was established under Act 338 of the Acts of 1915. Acts of 1915, p. 1400. Section 16 of the act is relied upon by the commissioners to uphold the validity of the order of the county court authorizing the change from a gravel

to an asphalt surface and also the changes in the route of the road. The section reads as follows:

"If the commissioners find it necessary and to the best interest of the district at any time before the improvements are made, to make any alteration or change in the plans and specifications, or the route of the road to be constructed, or that it is necessary to construct any additional laterals or extensions within the boundaries of the district not provided for in the original plans, or find that any road or roads in the course of construction should be extended in the additional territory not included in the original district, they shall have the engineer for said district or the State Highway Engineer, as the case may be, to make plans and estimates of the cost of such changes, laterals or extensions.

"When the engineer has completed his report of same he shall file it with the board of commissioners, and the commissioners of said district shall file same in the office of the county clerk. Thereupon the county court shall direct the clerk to give public notice that such report has been filed and set out the changes suggested, and calling upon the land owners to appear in that court and show cause for or against said changes in the plans, route or the construction of any laterals or extension as the case may be at a date not earlier than five days after said notice shall have been given in a newspaper having a general weekly circulation for two consecutive insertions. If the county court finds at the hearing above provided for that it is to the best interest of the district to make any change or alteration, or construct any lateral road or to extend any road into adjoining territory, or to extend the boundaries of the district so as to include adjoining territory, it shall make an order extending the boundaries of the district approving the changes submitted or the construction of any lateral road or extension as the case may be, and from the finding of the county court thereupon appeals may be taken by complying with section 14 of this act."

If the broad construction sought to be placed upon section 16 by the commissioners in regard to the alteration of the plans and specifications and route of the road to be constructed should prevail, it is at once obvious that the section is in conflict with section 1 of the act or at least that the two sections would be inconsistent with each other.

Subsection (A) of the first section provides for the circulation of the petition among the land owners and for the filing of a plat with the petition upon which the boundaries of the proposed district shall be plainly indicated showing the road which it is intended to construct and the improvement as nearly as practicable.

(1) Subsection (B) of section 1 provides that the State Highway Engineer or his assistants shall prepare preliminary surveys, plans, specifications and estimates of the road which it is proposed to construct and improve in the district and file them in the county court for the purpose of determining the feasibility of any road improvement and the cost thereof before the petitions mentioned in subdivision (A) are circulated. This section came up for construction in the case of *Lamberson* v. *Collins,* 123 Ark. 205. With the view of arriving at the true meaning of each of these subdivisions and to harmonize them, with each other, to meet the intention of the Legislature, the court held that in the formation of a district under the act, it was necessary that the provisions of subdivision (B) of section 1 be followed as well as the provisions of subdivision (A) of the section. It was said that the law-makers intended to provide for a source of information as to the magnitude and cost of the improvement before the property owners were called upon to exercise their choice, either favoring or opposing it. If the broad meaning now sought to be given to section 16 by the commissioners should be adopted, it will be readily seen that such construction would make it inconsistent with the construction we have already placed upon section 1 of the act and would be to hold that the Legislature did a vain and idle thing in declaring in section 1

that certain things must be done as a prerequisite for the valid organization of the district which could be undone by the commissioners under the power given them by section 16. In other words it will be inconsistent to hold that the provisions of section 1 in regard to the preliminary survey, plans, specifications and estimates of the proposed road must be made as a prerequisite to the validity of the proposed district and then to hold that under section 16 the commissioners might alter the plans, specifications, estimates and survey, in such a manner as to construct an entirely different kind of road on a wholly different route. As we have just seen one of the reasons for holding the requirements of subdivision (B) of section 1 mandatory was that this requirement was placed in the statute to enable the land owners, who are to be assessed for the cost of the improvement, to know in advance the nature and character thereof, and to enable them to act intelligently in determining whether or not they will encourage or oppose the improvement. The provisions of this section would not in any way safeguard the interests of the land owners if the commissioners could wholly change the plans and specifications so as to make an entirely different improvement and to construct it over an entirely different route. It has been many times said by this court that it is a primary rule in the interpretation and construction of statutes that the intention of the Legislature is to be ascertained and given effect. In doing this, each section is to be read in the light of every other section, and also the object and purposes sought to be accomplished by the act are to be considered. Therefore courts should give effect to the intention of the Legislature as collected from the entire statute and that intention should prevail over inconsistencies between different sections or different parts of the same section when either a strict or liberal construction of the language of any particular section would lead to a contradiction between it and other sections.

(2) In the application of these cardinal rules of statutory construction, we are of the opinion that the

decision of the chancellor was wrong. The change from a gravel road bed to an asphalt one was a radically different improvement from the one contemplated in the petition circulated among the land owners and from the one contemplated by the State Highway Department when it made its preliminary survey, plans, specifications and estimates under subdivision (B) of section 1. The commissioners also adopted a wholly different route from that at first contemplated. This they could not do. We think section 16 intended to give the commissioners the power to alter the plans and to change the route in order to better carry out the improvement as originally contemplated, but it does not authorize them to change the plan of the improvement to a wholly different one or construct it over a wholly different route. The construction we have placed upon the act tends to give effect to all the provisions of section 1 and section 16 and to harmonize their different provisions; thus breathing life into every part thereof, instead of making them inconsistent with each other.

(3) It is next insisted that the change in the plans is authorized by the petition for the organization of the improvement district. The petition among other things contains the following:

"Your petitioners agree to any change that may hereafter be made by the court or the commissioners of the district in the line of said road, provided the general purpose of securing the highway between the terminii is retained."

In the first place, it may be said that this provision of the petition only authorizes a change of the route; and not a change of the materials of which the road is to be constructed. In the next place, such construction would give those who signed the petition the power to change the provision of a statute and to give it a meaning which was not intended by the Legislature. It would in effect give them the power to legislate and to change the meaning of a provision of the statute in accordance with their will and contrary to the will of those who did not sign the

petition. Those who did not favor the improvement had the legal right to have the district organized and the improvement constructed in accordance with the provisions of the statute; and that right could not be taken away by any act of those signing the petition.

It follows that the chancellor erred in sustaining a demurrer to the complaint, and for that error, the decree will be reversed and the cause remanded with directions to overrule the demurrer and for further proceedings in accordance with this opinion.