Harris *v.* Wallace.

Opinion delivered June 6, 1919.

Appeal from Perry Chancery Court; *Jordan Sellers,* Chancellor; reversed.

*Calvin Sellers,* for appellant.

This case is controlled by 118 Ark. 119 and 133 *Id.* 491. The case in 130 Ark. 44 is conclusive.

*John L. Hill, J. H. Bowen* and *Rose, Hemingway, Cantrell & Loughborough,* for appellees.

The questions here are settled by 125 Ark. 329. See also 202 S. W. 831; 123 Ark. 205; 76 *Id.* 197; 85 *Id.* 171; 99 *Id.* 1; 112 *Id.* 342; 130 *Id.* 44. There was no abuse of discretion of the county court in laying out laterals. Here the laterals are moderate in amount. Two of the laterals only straighten out the road as sanctioned in 202 S. W. 831.

*Per Curiam.* Road Improvement District No. 1 of Perry County, one of the appellees, is a road improvement district formed by an order of the county court of Perry County pursuant to Act No. 338 of the General Assembly of 1915 (p. 1400), and the other appellees are commission-

ers of the district. Appellants own property in the district and instituted this action in the chancery court of Perry County for the purpose of obtaining a decree enjoining the commissioners from proceeding, under an order of the county court, to construct certain lateral roads and extensions not described in the original plans for the improvement.

It appears from the pleadings that after the organization of the district, the plans were altered so as to provide for additional lateral roads and extensions of the originally specified roads, and that those plans have been approved by an order of the county court, and that the commissioners are about to proceed with the construction of the roads and the additional laterals and extensions pursuant to the altered plans.

This litigation involves an attack on the validity of the proceedings on two grounds, one, that the statute does not, when properly interpreted, authorize the alteration of the original plans so as to provide for the construction of additional laterals or extensions not mentioned in the original plans which would constitute a substantial variance of those plans, and the other ground, that if the statute is an attempt to confer such authority, it is ineffectual because it contains no provision for assessing additional benefits arising from the added improvements. The chancery court upheld the validity of the proceedings and sustained the demurrer to the complaint.

Two of the justices of this court, Mr. Justice Hart and Mr. Justice Smith, are of the opinion that the first of the grounds of attack stated above should be sustained, that the proceedings looking to an alteration of the original plans are, for that reason, invalid, and that the decree of the chancery court should be reversed; two of the justices, Mr. Justice Wood and Mr. Justice Hart, are of the opinion that the second ground of attack stated above is well taken and that the proceedings are, for that reason, invalid, and that the decree should be reversed; Mr. Justice Wood does not agree with the other two justices

as to their conclusion on the first ground of attack, and Mr. Justice Smith does not agree with the other two justices as to the second ground of attack. The Chief Justice and Mr. Justice Humphreys are of the opinion that both grounds of attack are untenable, that the proceedings are valid, and that the decree should be affirmed. A majority of the justices entertain views on each of the points of attack which, if separately involved, would result in affirmance of the decree, but since the majority are, on different grounds, in favor of reversal, that must be the net result of their divergent views on the points involved.

It thus appears from the above recital that three of the justices are of the opinion that the decree should be reversed, but they do not agree on the ground of reversal.

The decree is, therefore, reversed and the cause remanded with directions to the chancery court to overrule the demurrer to the complaint, and for further proceedings.

HUMPHREYS, J., (dissenting). The original plans and specifications of District No. 1 of Perry County provide for the construction of the following roads: "Perry north, two miles to the county line; Perry east, four miles along the Rock Island railroad; Perry west, six and a half miles to Adona; Perry south, to Perryville and from there to Aplin." After the organization of the district, the commissioners proceeded, under section 16 of Act No. 338 of the General Assembly of 1915, the same act under which the district was organized, to lay out and include the following laterals in said district:

"From the point where the roads running from Perry to Adona would cross the track of the Rock Island & Pacific Railroad in section 29, township 5 north, range 17 west, the road is hereby changed so as to run parallel with said railroad track on the south side thereof to the point where the original recrosses said railroad track in section 31, township 5 north of range 17 west.

"From the town of Aplin along the existing highway. in a southwesterly direction through section 25, township 4 north, range 19 west, to the western boundary of the district. A lateral beginning on the road from Perry-. ville to Aplin on section line between sections 13 and 14, township 4 north, range 18 west, running southerly upon the said section line and upon the section line between sections 23 and 24, said township and range to the southeast corner of said section 24, thence southwesterly through section 26 upon the present highway, to the boundaries of the district.

"A lateral beginning at a point where the Perryville and Houston road intersects the Perry and Perryville road on the north line of section 10, township 4 north, range 17 west and running east along the existing highway on said north line of said section 10 and continuing along the existing highway in an easterly direction through sections 3, 2 and 1, township 4 north, of range 17 west, to the boundary of the district.

"Also a lateral beginning at the point where the roads now running from Perry to Adona in section 30, township 5 north, range 17 west, changes from a direction due south to a southwesterly direction and thence continuing due south across the track of the Chicago, Rock Island & Pacific Railroad to the line of the Perry- Adona highway as above laid out."

It is first contended by appellant that the commissioners, by and with the authority of the county court, had no right to lay off, establish and incorporate the said laterals as a part of the district, because the laterals did not appear upon the preliminary plans and, hence, were not petitioned for by the property owners of the district. As stated in the *per curiam* and this opinion, the property owners petitioned for the organization of the district under Act No. 338, Acts 1915, commonly known as the "Alexander Road Law." That act provides, in subdivision "F," section 1 thereof, for the filing of a plat with the petition showing the roads to be constructed as nearly as practicable. The plat was required so the

property owners might know what improvement was contemplated. *Lamberson* v. *Collins,* 123 Ark. 205. This requirement necessarily relates to the general or main plan of the improvement and does not exact the filing of a plat in the first instance of additional laterals or extensions authorized by the same act, if the commissioners deem them necessary and the county court finds, after hearing, that it is to the best interest of the district to have them. In fact, the language of section 16 aforesaid authorizes the construction of laterals and extensions "not provided for in the original plans." In petitioning for and organizing the district under the Alexander Road Law for the purpose of improving certain roads, the property owner necessarily petitioned for such laterals as the commissioners might deem necessary and the county court of benefit to the district, because one of the powers conferred by the act on the commissioners is to do that very thing, under the supervision and direction of the county court. It would not do to invoke the powers for organization under the act and discard the lawful powers for the construction of the improvement conferred by the act. The power to add laterals or make extensions was lawfully conferred. The Constitution does not inhibit it expressly or by implication. *McClure* v. *Topf & Wright,* 112 Ark. 342.

Again, appellant contends that section 16 of said act, authorizing the construction of laterals and extensions on certain conditions, should be construed as sanctioning only slight, or nominal, laterals or extensions. Such a limited construction is not only contrary to the language of the act, but would thwart the purpose and intent of the Legislature in its passage. A lateral road, or an extension of a road, necessarily means a road that will go somewhere. In the construction of the main improvement, it was quite likely that the main road or roads, would miss important villages, factories, quarries, etc. It is quite natural for the Legislature to have made some provision to connect the main improvement with places of importance that could not be reached with the main im-

provement. We think the specific language in this section, especially when read in connection with the whole act, shows that the authority thus conferred by the Legislature was conferred with this intent. Therefore, it would not be proper to so limit the laterals and extensions as to render them useless for the purposes intended by the Legislature. The proper construction to be placed upon the power conferred is that the commissioners, by and with the consent of the county court, may lay off, establish and construct such laterals or extensions as they may deem advantageous to the district, as feeders or auxiliaries to the main improvement. We think the laterals provided for in this district by the commissioners, and ordered to be constructed by the county court, are such laterals as were contemplated by section 16 of the act.

It is also contended that the statute made no provision for assessing additional benefits arising from the added improvements and that the statute is therefore ineffectual. Ample provision is made in sections 17 and 18 of said act to authorize the commissioners, as they did in this instance, to assess the benefits accruing to any property in the district by reason of the construction of said laterals. Section 17 of said act not only authorizes the commissioners, but any property owners, to petition the county court to increase or lower the assessment of benefits previously made, on account of the addition of lateral roads or extensions into adjoining territory. The fact that the commissioners are authorized to petition the county court for a reassessment, when changes are made in the plans or laterals added or extensions made into adjoining territory, clearly indicates that the benefits to all the property in the district may be reassessed. The mere fact that property owners are privileged to obtain a reassessment of benefits to their individual property does not preclude the idea that benefits may be assessed to all the property in the district. Section 18 of said act provides that the board of commissioners may, once a year, order a reassessment of the benefits.

The conclusions of the chancellor were correct and his decree should be affirmed.

I therefore dissent from the conclusions announced by the majority of the court, and am authorized to announce that the Chief Justice agrees with the views herein expressed.

SMITH, J.   It is impossible to comprehend the extent to which the district petitioned for by the land owners has been enlarged and altered without tracing out these alterations and enlargements on a map of the district.   We had a map of the district before us in the case of *Tarvin* v. *Road Improvement District No. 1 of Perry County,* 137 Ark. 354, 209 S. W. 81, a case involving the validity of the district now under review.   The right to construct these lateral roads was raised in that case, but we refused to decide the question there for the reason there stated, that, ''We are unable to ascertain from the record that this latter appeal was consolidated with the appeal taken from the organization of the district, so the contention of counsel that the order of the court establishing the laterals as a part of the district was without authority and contrary to law is not properly before this court for adjudication.''   However, on the question of the additional roads to be improved, we copy the following statements from appellants' brief:

''The commissioners of said district, however, have appealed to the county court to lay out the following additional laterals, which have been ordered by the county court of this county.

''From the point where the roads running from Perry to Adona would cross the track of the Rock Island & Pacific Railroad in section 29, township 5 north, range 17 west, the road is hereby changed so as to run parallel with said railroad track on the south side thereof to the point where the original road recrosses said railroad track in section 31, township 5 north of range 17 west.

''From the town of Aplin along the existing highway in a southwesterly direction through section 25,

township 4 north, range 19 west, to the western boundary of the district. A lateral beginning on the road from Perryville to Aplin on section line between sections 13 and 14, township 4 north, range 18 west, running southerly upon the said section line and upon the section line between sections 23 and 24, said township and range to the southeast corner of said section 24, thence southwesterly through section 26 upon the present highway, to the boundaries of the district.

"A lateral beginning at a point where the Perryville and Houston road intersects the Perry and Perryville road on the north line of section 10, township 4 north, range 17 west, and running east along the existing highway on said north line of said section 10 and continuing along the existing highway in an easterly direction through section 3, 2 and 1, township 4 north, of range 17 west, to the boundary of the district.

"Also a lateral beginning at the point where the roads now running from Perry to Adona in section 30, township 5 north, range 17 west, changes from a direction due south to a southwesterly direction and thence continuing due south across the track of the Chicago, Rock Island & Pacific Railroad to the line of the Perry-Adona highway as above laid out.

"The assessment of benefits has been made based upon the plans which involve the construction of said laterals, and the plaintiff says that said laterals were not petitioned for by the property owners of the district, did not appear upon the preliminary plans, which were filed before the petition was circulated, and that the defendant district has no power to construct said laterals, and the county court no authority to sanction their construction."

The net result of these enlargements and alterations is stated in appellants' brief as follows: "In this case the petitioners asked only for the construction of three roads, and now they find themselves saddled with laterals and extensions that almost double the cost of the work and the extent of highways to be built."

Counsel for appellee cite the opinion of this court in the case of *Conway* v. *Miller County Highway District,* 125 Ark. 329, as upholding the action of the court below in authorizing these additions and alterations. But it will be remembered that that was a case in which the commissioners were proceeding under a special act of the Legislature which gave them wide and discretionary powers in selecting the roads to be improved; while here we have a district organized under a general law to which we must look in ascertaining the powers of the commissioners.

The statute (Act 338, Acts 1915, page 1400) has been several times construed, and in each of these cases this court has said that the jurisdiction of the county court is dependent upon the filing of the petition. The machinery of the law is set in motion only by the filing of a petition of the property owners, so that the court possesses only such jurisdiction as is conferred by the filing of the petition, and can order the laying out and construction of only such roads as are sanctioned by the petitioners. The petition may describe the improvements contemplated in general terms and leave the plans for the future development of the board. *Ferguson* v. *McLain,* 113 Ark. 193; *Cox* v. *Road Imp. Dist. No. 8,* 118 Ark. 122. But the authority at last must come from the petition of the land owners.

The very recent case of *Rayder* v. *Warrick,* 133 Ark. 491, presented substantially the question we have for decision here. The changes in the plans there proposed are recited in the statement of facts as follows:

"*First.* That the road west from McGehee to the Drew County line should be located on the present roadbed, rather than on a straight line, because it would cost less, both in construction and right of way.

"*Second.* That the type of the road should be changed from a six-inch gravel one to a stone base with an asphalt surface.

"*Third.* The location of the road in the city of Mc-Gehee should be changed from a road on First avenue to run on Ash street to the intersection of Ash and Second

avenue, thence west on Second avenue. The total estimated cost of the road with the changes amounted to $119,300.''

It thus appears that the changes in the road there sought to be improved are trifling as compared with the additions here proposed, although the cost in that case, as in this, was nearly doubled, but the increased cost in that case was due to a proposed change from a gravel road to cne with a stone base and an asphalt surface.

It was contended in that case, as in this, that section 16 of the act gave the commissioners certain enlarged powers, once the district had been established by the county court, and that under this section, ''if the commissioners find it necessary and to the best interest of the district at any time before the improvements are made to make any alteration or change in the plans and specifications,'' to make them and it was not doubted or denied in that case that if section 16 were read by itself it apparently gave the commissioners that power. So now it is contended that ''if the commissioners find it necessary and to the best interest of the district at any time before the improvements are made * * * to construct any additional laterals or extensions within the boundaries of the district not provided for in the original plans * * * ,'' the commissioners may construct these laterals or extensions under the authority of section 16.

But the point decided in *Rayder* v. *Warrick, supra,* was that section 16 was not to be read by itself, and the reasoning of that case is so appropriate that I quote from it at length:

''If the broad construction sought to be placed upon section 16 by the commissioners in regard to the alteration of the plans and specifications and route of the road to be constructed should prevail, it is at once obvious that the section is in conflict with section 1 of the act or at least that the two sections would be inconsistent with each other.

"Subsection (A) of the first section provides for the circulation of the petition among the land owners and for the filing of a plat with the petition upon which the boundaries of the proposed district shall be plainly indicated showing the road which it is intended to construct and the improvement as nearly as practicable.

"(1)　Subsection (B) of section 1 provides that the State Highway Engineer or his assistants shall prepare preliminary surveys, plans, specifications and estimates of the road which it is proposed to construct and improve in the district and file them in the county court for the purpose of determining the feasibility of any road improvement and the cost thereof before the petitions mentioned in subdivision (A) are circulated. This section came up for construction in the case of *Lamberson* v. *Collins,* 123 Ark. 205. With the view of arriving at the true meaning of each of these subdivisions and to harmonize them, with each other, to meet the intention of the Legislature, the court held that in the formation of a district under the act, it was necessary that the provisions of subdivision (B) of section 1 be followed as well as the provisions of subdivision (A) of the section. It was said that the lawmakers intended to provide for a source of information as to the magnitude and cost of the improvement before the property owners were called upon to exercise their choice, either favoring or opposing it. If the broad meaning now sought to be given to section 16 by the commissioners should be adopted, it will be readily seen that such construction would make it inconsistent with the construction we have already placed upon section 1 of the act and would be to hold that the Legislature did a vain and idle thing in declaring in section 1 that certain things must be done as a prerequisite for the valid organization of the district which could be undone by the commissioners under the power given them by section 16. In other words it will be inconsistent to hold that the provisions of section 1 in regard to the preliminary survey, plans, specifications and estimates of the proposed road must be made as a prerequisite to the

validity of the proposed district and then to hold that under section 16 the commissioners might alter the plans, specifications, estimates and survey, in such a manner as to construct an entirely different kind of road on a wholly different route. As we have just seen, one of the reasons for holding the requirements of subdivision (B) of section 1 mandatory was that this requirement was placed in the statute to enable the land owners, who are to be assessed for the cost of the improvement, to know in advance the nature and character thereof, and to enable them to act intelligently in determining whether or not they will encourage or oppose the improvement. The provisions of this section would not in any way safeguard the interests of the land owners if the commissioners could wholly change the plans and specifications so as to make an entirely different improvement and to construct it over an entirely different route. It has been many times said by this court that it is a primary rule in the interpretation and construction of the statutes that the intention of the Legislature is to be ascertained and given effect. In doing this, each section is to be read in the light of every other section, and also the object and purposes sought to be accomplished by the act are to be considered. Therefore courts should give effect to the intention of the Legislature as collected from the entire statute and that intention should prevail over inconsistencies between different sections or different parts of the same section when either a strict or liberal construction of the language of any particular section would lead to a contradiction between it and other sections."

In the *Rayder* v. *Warrick* case the petition contained the recital that, "Your petitioners agree to any change that may hereafter be made by the court or the commissioners of the district in the line of said route, provided the general purpose of securing the highway between the *termini* is retained." We disregarded this recital in the petition and in doing so said:

"It would in effect give them (petitioners) the power to legislate and to change the meaning of a provision of

a statute in accordance to their will and contrary to the will of those who did not sign the petition. Those who did not favor the improvement had the legal right to have the district organized and the improvement constructed in accordance with the provisions of the statute; and that right could not be taken away by any act of those signing the petition."

If under a petition for twenty miles of road, estimated to cost $60,000, roads forty miles in length and costing $120,000 can be authorized, as in the case here, why may not roads one hundred miles long be constructed under a petition for a road five miles in length? And what magic is there in designating the additional roads as laterals which authorizes the construction of a road so designated which could not be constructed, if it were otherwise designated? To so construe this statute would make the petition upon which the property owner thought he had a right to rely a mere pitfall.

The proper rule to apply in the construction of this statute is announced in the case of *Hout* v. *Harvey*, 135 Ark. 102, in which the doctrine of *Rayder* v. *Warrick*, *supra*, is reaffirmed, and that is, that these plans are not so fixed and immobile that no departure whatever from them can be made, but that the petition is jurisdictional, and the plans of the district petitioned for do form the basis of the improvement, and alterations of and additions to these plans which may be made must be such as are calculated to perfect or improve them, and not alterations or additions which substantially change the plans for which the property owners have petitioned.

I think the act confers authority to revise the assessments to conform to authorized changes in the plans; but there is no authority to make assessments for an improvement for which the property owners have not petitioned.

HART, J. I agree with Mr. Justice Smith that it would be contrary to the principles decided in *Rayder* v. *Warrick*, 133 Ark. 491, to hold that the commissioners have power, under section 16 of our general statute for

the creation and establishment of road improvement districts, to build laterals of such extended character.

Section 16 of the act provides that the commissioners may alter the plans, or to construct laterals within the boundaries of the district not provided for in the original plans, or even change the road so as to extend it to additional territory not included in the original district. Acts of 1915, p. 1400.

In *Rayder* v. *Warrick, supra,* we held that section 16 and section 1 should be read in the light of each other and construed together. The provisions of section 1 were held to be mandatory to enable the land owners to know in advance the nature and character of the improvements to be constructed so that they might act intelligently in deciding whether they would aid or oppose the improvement. So it was held that the provision of this section would not in any way safeguard the interests of the land owners if the commissioners could wholly change the plans so as to make an entirely different improvement and to construct it over a wholly different route.

In the application of this principle to the present case, it seems equally manifest to my mind, that the land owners could not derive any benefit from section 1 and that the making of the plans under it would be useless expense if the commissioners, at will, might change the character of the improvement by constructing laterals of such length and added cost as in the present case. Indeed, I think that that part of section 16 which provides for the construction of laterals creates a new improvement and is inconsistent with the other provisions of the act and is therefore void.

I, also, agree with Mr. Justice Wood in holding that that part of the section with reference to the extension of laterals is void because the act nowhere provides for an assessment of benefits after the commissioners had determined to change the district by extending the road within or without the boundaries of the district. Local assessments can only be constitutional when imposed to pay for local improvements conferring special benefits

on the lands assessed and then only to the extent of these benefits. When lateral roads are extended from the original road, either within the boundaries of the district as originally established or beyond the limits of the original districts and the boundaries of the original districts are also extended, in either event, it is manifest that the extension of the laterals might be a substantial part of the cost of the improvement and might effect the change in the benefits to each tract of land throughout the district. In other words, an assessment of benefits under the improvement as originally planned would not meet the requirement for the assessment of benefits under the altered plans. This is so because as we have just seen, local assessments can only be imposed to the extent of the benefits and it cannot be known whether the cost of the improvement will, or will not, exceed the value of the benefits until an assessment of all the lands within the district is made. This is a prerequisite to the construction of the improvement and the assessment of benefits must be made before it can be determined whether or not the improvement can be constructed.

It is true section 17 provides that whenever the commissioners or any owner of lands within the district finds that by the construction of any lateral roads or extension into an adjoining territory that the assessment of benefits previously made on any land has become inequitable by reason of the change, they may petition the county court to equalize the assessment. This is not sufficient. Under this section the commissioners or the land owner might or might not act. There is nothing requiring the commissioners to do so. As before stated, the commissioners must determine in advance that the cost of the improvement does not exceed the benefits conferred before they have the power to construct the improvement.