SELF *v.* ROAD IMPROVEMENT DISTRICT No. 1 OF GREENE COUNTY.

Opinion delivered July 12, 1920.

1. APPEAL AND ERROR—PRESUMPTION AS TO PLEADING.—For the purpose of testing the correctness of the court's ruling sustaining a demurrer to the complaint, allegations of the complaint which are well pleaded must be accepted as true.

2. PLEADING—CONCLUSIONS.—General allegations that the plans of a certain road district do not conform to plans approved by the county court, without stating the facts upon which such conclusions are grounded, are insufficient on demurrer to raise an issue.

3. HIGHWAYS—STATUTE CONSTRUED.—Road Laws 1919, No. 186, creating the Tri-County Highway Improvement District, in permitting county districts to be formed within such district, and providing in section 37 that "said other districts, when organized, may proceed with their work and carry out their plans for improving the road in said district so far as parts of them have not been improved or contracts for their improvement let by the districts thereby created before August 1, 1919," intended that districts created by the county court prior to such date should be allowed to complete such work; the words "thereby created" referring to districts and the word "not" being a clerical misprision.

4. HIGHWAYS—LEGISLATIVE POWER OVER DISTRICTS.—It was within the legislative power, in creating a road improvement district, to provide that parts of such improvement may be constructed by other road districts created by the county courts.

Appeal from Greene Chancery Court; *Archer Wheatley,* Chancellor; affirmed.

*Huddleston, Fuhr & Futrell,* for appellant.

Act No. 186, Acts 1919, is void, as it withdrew from the county court jurisdiction to create district No. 1 of Greene County to build road proposed by its plans. The court erred in overruling the demurrer. 130 Ark. 517. 214 S. W. 23 has no bearing on this case.

The appellee, *pro se.*

The appellee district was established in strict conformity with law. Act 338, Acts 1915; act 186, Acts 1919; 130 Ark. 507; 214 S. W. 23.

WOOD, J. This action was brought by the appellants against the appellees, to restrain them from constructing the improvement for which Road Improvement District No. 1, of Greene County, Arkansas, hereafter called No. 1, was created.

The following are substantially the allegations of appellants' complaint: That they were land owners in No. 1; that on May 28, 1919, an order was entered purporting to establish No. 1 by the county court of Greene County under the provisions of act 338 of the Acts of 1915, commonly known as the Alexander Road Law; that the district proposed to construct a road from Walcott, via Light, to Rhea Bridge on Cache River, a point on the boundary line between Greene and Lawrence counties, at which point it connected with an improvement district from Rhea Bridge to Walnut Ridge, Ark.; that the regular session of the Legislature of Arkansas in 1919, on March 6, passed act 186 creating Tri-County Improvement District, hereafter called Tri-County, providing for the construction of a road from Rhea Bridge, via Light, Bono, and Jonesboro, to Harrisburg; that at the time act 186 was passed the legal existence of No. 1 was pending in the Supreme Court; that the road to be built under act 186 from Rhea Bridge to Light is the identical road provided for in district No. 1; that sections 36 and 37 of act 186 reads as follows:

"Section 36: If any part of the roads herein authorized and directed to be improved in said district are improved, either by the county or by any other agency in this district, before the commissioners of this district find it necessary to proceed with the work of improvement, and such improvements are sufficient or available under the plan of improvement in this district as approved by the county court, it shall be the duty of the commissioners to credit the assessment of benefits against any of said land with such amounts as represent the amount that said benefits are reduced because of said improvement or any part of the said road made by other agencies than the district and accepted by the district as complying with their plans."

"Section 37. This bill or act shall not prevent the formation of any other road improvement district that has filed its plan or may file its plan with the county court of Greene, Craighead or Poinsett counties; but if any part of the road to be improved under this act shall be improved by said other district before work on such part of said road is done by the district hereby created or contracts therefor let, credit on the assessment of benefits in the district hereby created shall be given as provided in section 36 of this act. Said other districts, when organized, may proceed with their work and carry out their plans for improving the road in said district, so far as parts of them have not been improved or contracts for their improvement let by the districts thereby created before August 1, 1919, giving credit in like manner on the several assessments of benefits for improvements in parts of the road made by the districts hereby created."

That by the terms of act 186 it was impossible for No. 1 to build that part of the road from Rhea Bridge to Light, and that No. 1 was therefore void; that the road from Rhea Bridge to Light is 3 90/100 miles; that the proposed road from Walcott to Rhea Bridge is 10 37/100 miles; that the construction of the road from Rhea Bridge will be nearly one-half the cost of the whole improvement proposed by No. 1; that the plans for the

roads under act 186 have been made and approved; that these plans differ from the plans of district No. 1; that the Tri-County has let and contracted the construction work for the roads in the district since May 28, 1919; that No. 1 has made and confirmed the assessment of benefits, but has not made a levy or attempted to create any lien upon the lands in the district and has not let any contract for the construction, and therefore had not on August 1, 1919, let any contract for improving the road from Rhea Bridge to Light; that No. 1 can not exist for building any roads not in substantial compliance with the preliminary plans made prior to the creation of the district; that the building of any road which does not include the Rhea Bridge to Light section in accordance with those plans is not in substantial compliance with the prayer of the petition asking for the creation of No. 1; that the petition upon which No. 1 was established was filed December 26, 1917, when it was possible to have built the road petitioned for; that conditions have materially changed, and at the present time a large majority of the property owners of said district are opposed to same, but at the time the petition was filed it contained a majority required by law; that No. 1 can not build the road from Rhea Bridge to Light and therefore can not build from Walcott to Light or from Walcott to some other place or make other plans for roads which may be carried out; that No. 1 therefore exists for no purpose; that appellees were threatening to issue, sell, and deliver a large amount of bonds as obligations of the district which would be a cloud upon the title of the appellants and threatening to let a contract for the construction work.

Appellants alleged that their lands would not be benefited by the proposed improvement, and prayed that appellees be perpetually enjoined from making same and that No. 1 be declared void.

The appellants attached as an exhibit to their complaint a copy of the judgment entered by the Greene County Court. The recitals, among other things, de-

scribed the lands embraced in No. 1, and also the route of
the road to be improved.

The appellees entered a general demurrer to the com-
plaint.

The court sustained the demurrer so far as the com-
plaint seeks to invalidate No. 1, but overruled the de-
murrer so far as the complaint seeks to enjoin the appel-
lees from constructing the road from Light to Rhea
Bridge, and entered a decree dismissing the complaint
so far as it seeks to invalidate No. 1 and enjoined ap-
pellees from constructing or letting any contracts for
the construction of any part of the road proposed by the
plans of No. 1 from Light to Rhea Bridge until further
orders of the court. From which decree both appellees
and appellants have appealed.

*First.* For convenience the road route involved in
the two districts, No. 1 and Tri-County will be referred
to as "the section in controversy."

For the purpose of testing the correctness of the
ruling of the court on the demurrer, we must accept as
true the allegations of the complaint that are well pleaded.
*Harrison* v. *Abington,* 140 Ark. 115; *Chapman & Dewey
L. Co.* v. *Rd. Imp. Dist.,* 127 Ark. 318-22.

The recitals of the judgment of the county court,
made an exhibit to the complaint, show that all the re-
quirements of act 338 of the Acts of 1915, had been com-
plied with in the establishment of No. 1, and there are no
allegations of fact in the complaint which show to the
contrary. As was said in *Chapman & Dewey Land Co.*
v. *Osceola & Little River Rd. Imp. Dist., supra,* "section
3 of act 338 of the Acts of 1915, provides: 'The order of
the county court establishing the improvement district
shall have the force and effect of a judgment and shall
be deemed conclusive, final and binding upon all territory
embraced in said district, and shall not be subject to col-
lateral attack, but only to direct attack, on appeal.'

"In the absence of allegations of fact in the complaint
showing that the record of the county court does not state
facts essential to its jurisdiction, or that the organiza-

tion of the district was invalid, we must hold that, under the above and other sections of the statute, the appellants had a complete and adequate remedy at law for all the grievances set forth in their complaint. Equitable relief is not given where there is an adequate remedy at law.''

The allegations of the complaint show that the Tri-County was authorized by act 186 to construct the section in controversy before No. 1 was established, and that the route provided for by act 186 ''is the same and identical with the route'' of No. 1. The demurrer admits the truth of these allegations. But act 186, which was passed prior to the establishment of No. 1, does not prevent the establishment of No. 1 for the purpose of making the improvement of the section in controversy, which is a part of the improvement contemplated by act 186 creating Tri-County. On the contrary, sections 36 and 37 of the act 186 clearly show that the county court could create No. 1 to make the improvement of the section in controversy upon certain conditions expressed in those sections which we will refer to later.

The allegations in the complaint that by the terms of said act 186 it was impossible for said No. 1 to build the section in controversy, and ''that said impossibility existed and appeared at the time said No. 1 was attempted to be created; that No. 1 exists for no purpose, is non-existent and can not build the section in controversy or make other plans for roads which may be carried out, etc.,'' are all general allegations. They merely state conclusions without stating the facts upon which such conclusions are grounded, and from which it may be seen that such conclusions are correct. There is an allegation that the plans of No. 1 do not conform to, but differ from, the plans of the Tri-County for the section in controversy, also, that No. 1 can not exist for the purpose of building any road not in substantial compliance with the preliminary plans made prior to the attempted creation of No. 1. But these allegations are likewise the mere statements of conclusions.

No. 1, to be available under this act, would have to conform in substantial particulars to the plans approved by the county court for the Tri-County. *Rayder* v. *Warrick*, 133 Ark. 491; *Hout* v. *Harvey,* 135 Ark. 102; *Harris* v. *Wallace,* 139 Ark. 184; *Pritchett* v. *Rd. Imp. Dist.,* 142 Ark. 509. But here again no facts are pleaded to show wherein the plans of No. 1 do not conform to the plans of the Tri-County, or that the difference in plans, if any, was so substantial as to invalidate the judgment of the county court creating No. 1. The demurrer only admits the truth of the allegations that are well pleaded. No allegations of fact are pleaded which show that the establishment of No. 1 was void. General allegations of a complaint amount to nothing unless the facts to support them are distinctly and specifically averred. *Pharr* v. *Knox,* 145 Ark. 4, and cases cited; *Nettles* v. *Hazelwood Rd. Imp. Dist. No. 2 of Greene County,* 144 Ark. 632.

The decree of the court was therefore correct in sustaining the demurrer and in dismissing the complaint in so far as it sought to invalidate the creation of No. 1.

*Second.* The next question is, could No. 1 be restrained from building the section in controversy?

The decision of this question involves the construction of sections 36 and 37 set forth in the complaint, and, indeed, the whole of acts 186 and 338, in so far as may be necessary to ascertain the intent of the Legislature and effectuate its purpose, if possible, to build the section of road in controversy.

The Tri-County, as its name implies, was established to construct a road embracing territory in three counties. The road was eighty-five miles in length. No. 1 embraced territory in Greene County only and was a road 10 37/100 miles in length. The section in controversy was a part of both roads, and was only 3 90/100 miles in length. Therefore, the section in controversy was a very inconsiderable portion by comparison with the remainder of the Tri-County. Tri-County was established before No. 1.

The above general facts, kept in mind, will serve to make clear the intent of the Legislature in sections 36 and 37 and to elucidate the following confused and doubtful language of section 37: "Said other districts, when organized, may proceed with their work and carry out their plans for improving the road in said district, so far as parts of them have not been improved or contracts for their improvement let by the districts thereby created before August 1, 1919, giving credit in like manner on the several assessments of benefits for improvement in parts of the road made by the districts hereby created."

As No. 1 was not in existence at the time the Tri-County was established, and as the Legislature could not know at that time that No. 1 would ever be created, and could not know, if it were created, that it would be able to improve or let contracts for the section in controversy before August 1, 1919, it would be unreasonable to conclude that the Legislature intended that the Tri-County should be built or contracts for the building thereof let by August 1, 1919, as a condition precedent to its right to complete the entire road project. August 1, 1919, was intended as a time limit upon the Tri-County or No. 1, one or the other, as the date when the section in controversy should be constructed or the contract therefor let. Was this date a limitation upon No. 1 or upon Tri-County?

Considering the magnitude of the project of the Tri-County compared with No. 1, it is more reasonable to conclude that the limitation applied to No. 1 rather than to the Tri-County. This construction, too, best accords with the context of sections 36 and 37. The Legislature had ascertained either that districts had been formed, or that they might be formed, in the counties of Greene, Craighead, and Poinsett, under act 338, for the improvement of roads which covered a part or parts of the Tri-County, and that these, involving lesser projects, might progress more rapidly than the Tri-County. Hence, the Legislature intended that if said districts were created

and had improved or let contracts for the improvement of parts of the same road as Tri-County before August 1, 1919, these districts should be permitted to continue and to complete those parts of their road projects which might be the same as the Tri-County, the land owners in such districts receiving credit therefor in the assessments of benefits by Tri-County.

The word ''districts'' in section 37, preceding the words ''thereby created,'' show that the latter words, ''thereby created,'' refer to the words ''districts.'' The word ''not'' in paragraph 37 as quoted last above, is manifestly a clerical misprision, and should be omitted. The word ''thereby'' refers to the word ''districts'' just preceding it, and is the word intended. This construction harmonizes all portions of sections 36 and 37 and gives to them a meaning which comports with the purpose of act 186, when it is considered as a whole. It was in the province of the Legislature to provide that part or parts of the Tri-County might be built by other districts covering as a part of their project such part or parts of Tri-County, provided work was done or the contract let therefor by August 1, 1919. This was within the jurisdiction of the Legislature, although the other districts were created by the county court, instead of the Legislature. See *Bennett* v. *Johnson,* 130 Ark. 517; *VanDyke* v. *Mack,* 139 Ark. 524.

The judgment of the trial court overruling the demurrer, in so far as the complaint sought an injunction against No. 1 restraining it from building the section in controversy, is therefore correct. There is no error in the decree, and it is affirmed.

Justices HART and SMITH dissent.