ADAMS *v.* HIGHWAY 10 WATER PIPE LINE IMPROVEMENT DISTRICT No. 4.

4-9298                                      230 S. W. 2d 956

Opinion delivered June 19, 1950.

Rehearing denied July 3, 1950.

*Fitzhugh & Cockrill,* for appellant.

*Rose, Dobyns, Meek & House,* for appellee.

HOLT, J. Appellants, property owners within Highway 10 Water Pipe Line Improvement District No. 4, brought this suit to restrain further proceedings and for dissolution of the district.

Essential stipulated facts were: "The petitions asking the formation of Highway 10 Water Pipe Line Improvement District No. 4 were filed on October 21, 1946. and, in part, read as follows: 'We respectfully petition the Pulaski County Court to lay off an improvement district pursuant to the provisions of Act 41 of 1941 enacted by the General Assembly of the State of Arkansas and approved February 13, 1941, and all amendments thereto, for the purpose of constructing a water pipe line and connecting the same with the waterworks system supplying the City of Little Rock.'

"An order creating the district was entered on October 25, 1946. Neither in the Petitions nor in the Order was there any reference to the length of the water pipe line to be constructed.

"On June 5, 1947, the Commissioners filed Plans of Improvement reciting that the district would construct or cause to be constructed a six-inch water pipe line along Highway 10 commencing at the east corner of Block B, Woodland Heights Addition to the City of Little Rock, being the end of the existing water main owned by Little Rock Municipal Water Works, and running westerly along Highway 10 to the northwest corner of the Joe T. Robinson School property. To the Plans of Improvement there was attached a plat indicating the starting point and the course of Highway 10 from such starting point to the terminal point.

"The assessment of benefits as made by the Assessor of the district was filed in the office of the County Clerk on June 15, 1948. Notice was duly published, and on July 21, 1948, an order was entered confirming said assessment of benefits.

"On the 22nd day of September, 1948, an order was entered levying a tax in the sum of $207,650 against the lands in the district, being the amount of the principal of

the bonds to be issued, the anticipated interest thereon, and 10 per cent for unforeseen contingencies, but said order was subsequently set aside.

"On February 8, 1949, the Commissioners filed revised Plans of Improvement reciting that the water line would be extended along Highway 10 from the east corner of Block B, Woodland Heights Addition to the City of Little Rock, being the end of the existing water main owned by Little Rock Municipal Water Works, and running thence westerly along Highway 10 to the southwest corner of the SE ¼ of SW¼ of SW¼ of NE¼, section 15, township 2 north, range 14 west. A plat was attached indicating the starting point and the course of the highway from such starting point to the terminal point.

"On the same day the Commissioners filed a petition reciting that they had revised the Plans of Improvement shortening the length of the water pipe line to be laid, and that this would diminish or remove benefits to the lands within the district which are west of the new terminal point. They prayed that they be permitted to withdraw the assessment of benefits theretofore filed and to substitute a revised assessment of benefits.

"On the same day an order was entered reading as follows: 'On this day is presented to the court the petition of the commissioners of Highway 10 Water Pipe Line Improvement District No. 4 asking that they be authorized to withdraw the assessment of benefits heretofore filed.

"'The Court being well and sufficiently advised doth find that the Plans of Improvement have been revised and that it would be proper for the commissioners to withdraw the original assessment of benefits and make another assessment of benefits based upon the plans as revised.

"'THEREFORE, it is ordered and adjudged that said commissioners be, and they are hereby, permitted to withdraw the book containing the assessments heretofore approved by order of this court and file herein a book containing the revised assessments.'

"On March 15, 1949, the Assessor of the District filed the revised assessment of benefits based upon the Revised Plans of Improvement. Notice of the filing of such revised assessment was duly published, and on April 22, 1949, an order was entered confirming the same.

"Notice of the revision in the Plans of Improvement was duly published by the Commissioners in July of 1949.

"On December 3, 1949, an order was entered levying a tax in the amount of $178,360 being the amount of the principal of the bonds issued, the anticipated interest thereon, and 10 per cent for unforeseen contingencies. It provides that the tax shall be paid in annual installments, the installments for the years 1950 and 1951 to be 4 per cent, and commencing in 1952 each annual installment to 6 per cent of the assessed benefits.

"The parties, in offering testimony, are not to be restricted by anything contained in this Stipulation, as it is executed merely for the purpose of dispensing with admitted facts and with the introduction of original papers on file in the office of the Clerk of the Pulaski County Court.

"The lands described in the Petition signed by property owners and in the Order of October 25, 1946, creating the District, comprise land on either side of Highway 10 approximately a quarter of a mile back on either side of the highway from the present terminus of the existing water line running westward about six miles to the Joe T. Robinson School. Of these lands described in said Petition and Order and appearing on the original assessment roll, lands of Roy Sturgis in area 223.10 acres were assessed with benefits and under the revised plans and substituted assessment roll, lands of Roy Sturgis in area only 32.2 acres were assessed. The effect of the changed plans is to eliminate the Roy Sturgis lands stopping the proposed pipe line about 7/8 of a mile east of the Joe T. Robinson School and eliminating about 1/6 of the length of the pipe as originally proposed. The defendants take the position that the lands of the Joe T. Robinson School were never legally assessable with benefits.

"With the exception of Dr. Glenn H. Johnson, all parties whose names appear on a certain Petition circulated recently among landowners in opposition to the District are represented by the Plaintiffs in this action and are parties to the class action.

"Although a contract was prior to the institution of this suit entered into between the District and W. R. Stephens Company for the sale of $92,000 worth of bonds at 4% with conversion privileges, said bonds have not been delivered and the District has not let a contract for the construction of the improvement or delivered any money to the Little Rock Municipal Water Works for the laying of the pipe."

The trial court found "that the orginization of the defendant district was legal and valid in all respects; that the Commissioners had a right to make a change in the Plans of Improvement; that the assessment of benefits was confirmed and is now incontestable," and entered a decree accordingly.

For reversal, appellants earnestly contend that the change of plans and specifications, eliminating approximately one mile of the area on the west end of the District (amounting to about 1/6 of the District which included the Joe T. Robinson School) in the construction of the District, amounted to such a material change and alteration from the original plans and character of the District as would void all orders of the County Court made subsequent to October 25, 1946.

We have concluded that appellants' contention must be sustained.

As above indicated, the procedure followed here in the formation of the District was under Act 41 of the Acts of 1941, (now §§ 20-701—20-729, Ark. Stats. 1947).

It is undisputed that no bonds have been executed, issued or delivered, that no work has been done and that under the changed plans approximately one mile of the west end of the District, including the school, was eliminated.

In sustaining appellants' contention, we must necessarily, and do hold, that the failure to take the water line to the school constituted a material change of plans and specifications in the District and that § 20-723, Ark. Stats. (1947), which allowed the change, does not allow a material change to be made.

Section 20-723 is § 23 of the "Suburban Improvement District Law" and provides: "The commissioners may at any time alter the plans and specifications. The changed plans, with the accompanying specifications, etc."

Unless the words "changed plans" have a limited meaning by judicial construction, then they would mean any change, either material or immaterial. A study, however, of our previous decisions convinces us that these words "changed plans," as well as the purpose and intent of § 23 above, permit only immaterial changes and does not permit of material changes.

The Alexander Road Law is Act 338 of 1915 and § 16 of Act 338 gave to the Commissioners of the District the power to make changes. The procedure for such changes is (1) a report to the County Court, showing the change; (2) published notice by the County Court for two weekly insertions; (3) order of the County Court making the change; and (4) appeal by any dissatisfied land owner to the Circuit Court within ten days from the County Court order. Section 16, together with § 14 of the Alexander Law, provided that if there be no appeal from the County Court, then the judgment of the County Court making the change becomes conclusive on all property holders. The Alexander Law says "any alteration or change." The Suburban Law says "the changed plans." So it will be observed that § 23 of the Suburban Law is quite similar to § 16 of the Alexander Law.

We have several cases construing § 16 of the Alexander Law. In *Rayder* v. *Warrick*, 133 Ark. 491, 202 S. W. 831, we considered the "change" section of the Alexander Law and said: "We think § 16 intended to give the Commissioners the power to alter the plans and to

change the route in order to better carry out the improvement as originally contemplated, but it does not authorize them to change the plan of the improvement to a wholly different one or construct it over a wholly different route."

Then in *Hout* v. *Harvey*, 135 Ark. 102, 204 S. W. 600, we further considered § 16 of the Alexander Law and held that it allowed only minor changes.

Then came *Pritchett* v. *Road Improvement District*, 142 Ark. 509, 219 S. W. 21, which was also a case under the Alexander Law. There, the Commissioners changed the road by moving one mile of it a quarter of a mile away from the previous course. The right to make the change was challenged. This Court said: "This necessarily constituted the adoption of a different route and not merely a slight change . . ." And we also held that the alteration of the plan was void. In the course of the opinion, this Court reviewed the earlier cases on § 16 of the Alexander Law and summarized: ". . . changes with respect to the character of the improvement and the route of the road must be confined to such changes as are consistent with the original plans and not changes to a different route . . ." (Headnote 3).

We may therefore summarize these cases involving § 16 of the Alexander Law by saying that the changes allowed are minor, or immaterial changes; and that major, or material changes, are not allowed under § 16 of the Alexander Law. These holdings were all before the adoption of the 1941 Act here involved, so that the words "changed plans" and the permission for change of plans had a definite meaning by judicial construction when the Suburban Law was adopted; and we therefore conclude that the "change" section in the Suburban Act necessarily is limited to immaterial changes, and that material changes are not allowed by § 23 of the Suburban Law.

In *Phillips* v. *Tyronza and St. Francis Road Improvement District*, 145 Ark. 487, 224 S. W. 981, the Parkin Road Improvement District was organized under a special act (Act 181 of 1920). The "change" section

of that Act is § 26 and appears to have been patterned after the "change" section of the Alexander Law and of § 23 of the Suburban Law here under consideration. Under said § 26, the Commissioners of the Parkin Road Improvement District entirely eliminated one of the lateral roads and dissatisfied property holders brought suit in equity to enjoin the issuance of bonds. This Court held that the elimination of the lateral was a *material change* and rendered the assessments void. In that case, as in the case at bar, it was urged that the remedy of a dissatisfied land owner was by appeal, as provided in the "change" section of that Act, and not by an independent suit in equity, as was there undertaken but we denied this contention, saying: "It is contended by the road commissioners that the present suit was not commenced within the time allowed by the statute, and for that reason should be dismissed. In making this contention they rely upon the provision of the statute limiting the time of landowners in making objections to the assessment of benefits on their lands. The present suit, however, was not instituted for that purpose. It goes to the integrity of the district and attacks its validity. Hence it does not come within the provision of the statute limiting the time for reviewing assessments of benefits. *Mo. Pac. Rd. Co.* v. *Conway Co. Bridge Dist.*, 134 Ark. 292, and *Mo. Pac. Rd. Co.* v. *Conway County Bridge Dist.*, 142 Ark. 1, 218 S. W. 189."

So in the case at bar, when we hold, as we have, that the change attempted was a material change, then it necessarily follows that such change does not come within the purview of § 23 of the Suburban Law, and that the present suit in equity goes to the integrity of the orders making the changes in the district.

Reaching this conclusion, it necessarily follows that the decree of the Chancery Court must be and is reversed.

GEORGE ROSE SMITH and DUNAWAY, JJ., not participating.